## QUITTNER et al. v. LOS ANGELES STEEL CASTING CO.

### No. 13230.

United States Court of Appeals
Ninth Circuit.

March 13, 1953.

As Amended on Denial of Rehearing
April 20, 1953.

Aaron Levinson, Los Angeles, Cal., for appellant.

Stuart M. Salisbury and William A. Sherwin, Los Angeles, Cal., for appellee.

Before STEPHENS, BONE and ORR, Circuit Judges.

ORR, Circuit Judge.

This appeal presents the following question of law: Where a corporation made a voluntary assignment for the benefit of creditors and was thereafter adjudicated a bankrupt, may a creditor of the bankrupt corporation who had advanced money on a sales contract prior to the assignment use its claim against the bankrupt corporation as a defense to a claim of the trustee in bankruptcy for the price of goods shipped such creditor of the bankrupt corporation by the assignee for the benefit of creditors in continuance of the sales contract?

The facts are for the most part not in dispute, the parties having stipulated thereto.

On October 1, 1948 appellee gave a purchase order for one thousand tons of electric furnace scrap to California Hydraulic Metals, Inc. On October 18, 1948 appellee advanced $15,000 to California Hydraulic Metals, Inc., to be credited against the purchase price of shipments of scrap already made and shipments to be made.

On October 23, 1948 California Hydraulic Metals, Inc., executed and delivered a general assignment for the benefit of creditors to Ralph Meyer, as assignee thereunder, and Meyer took possession that day.

Prior to the execution and delivery of the assignment for the benefit of creditors, appellee had received four shipments of electric furnace scrap from California Hydraulic Metals, Inc., totaling in price $6,202.44, which it applied against the $15,000 advance, leaving a balance of $8,797.56 due appellee at the time of the assignment.

On October 27, 1948 the assignee shipped appellee scrap of the agreed value of $1,335.60, and appellee received this shipment on October 29, 1948. On October 30, 1948 the assignee shipped appellee scrap of the agreed value of $1,676.16 and appellee received this shipment on November 3, 1948. There was no indication on the invoices of any assignment for the benefit of creditors or change in the management or operation of California Hydraulic Metals, Inc.

The stipulation of facts is silent as to whether appellee had knowledge of the assignment prior to receipt of these two shipments. Louie Hochman, an officer of California Hydraulic Metals, Inc., testified that he informed the secretary-treasurer of appellee prior to receipt of the shipments that the assignment had been made. The secretary-treasurer was deceased at the time of the trial. The District Court made no finding as to appellee's knowledge of the assignment at the time the two shipments were received.

Some time after November 2, 1948, appellee received a mimeographed form letter from the assignee dated November 2, 1948, stating that the assignment had been made and announcing a creditors' meeting. Subsequent to November 3, 1948, appellee received additional shipments of electric furnace scrap for which it paid the assignee.

An involuntary petition in bankruptcy was eventually filed against California Hydraulic Metals, Inc., and the corporation was duly adjudicated a bankrupt. Appellant trustee in bankruptcy commenced the present action to recover the agreed value of the two shipments of scrap sent by the assignee. Appellee pleaded as a "cross-claim" [1] that it had advanced $15,000 to the bankrupt corporation; that it had credited the bankrupt corporation with $6,204.44 for the shipments made prior to the assignment and with $3,011.76 for the two shipments made by the assignee subsequent to the assignment; and that it was entitled to the difference.

The District Court held that appellee was entitled to recover on its "cross-complaint" and entered judgment against appellant for $5,785.80.

 We do not believe the problem is analytically one of set-off, as appellee has argued. Set-off generally involves claims arising out of different transactions or occurrences. If the advance of $15,000 were viewed as a transaction wholly separate and distinct from the delivery of the two cars of scrap, then the case would fall within the scope of the rule that where an assignee for the benefit of creditors sells property of the assignor's estate to a creditor thereof such creditor cannot assert his claim as a set-off against the demand of the assignee for the price of the goods sold by the assignee.[2] Further, if the problem were technically one of set-off based upon independent transactions, appellee would be

---

1. This pleading was improperly designated since cross-claims are limited to claims by one party against a co-party. Fed.R. Civ.P. rule 13(g), 28 U.S.C.A. Where a pleading has been so misentitled, the court may where proper treat it as a defense, (cf. Fed.R.Civ.P. 8(c) or as a counterclaim, Huntington Palisades Prop-

erty Owners Corp. v. Metropolitan Finance Corp., 9 Cir., 1950, 180 F.2d 132, certiorari denied, 339 U.S. 980, 70 S.Ct. 1027, 94 L.Ed. 1384.

2. Otis v. Shantz, 1889, 55 Hun. 603, 8 N.Y.S. 293, affirmed 128 N.Y. 45, 27 N.E. 995; James v. McPhee, 1887, 9 Colo. 486, 13 P. 535; Capehart v. Etheridge, 1869,

required to show that its claim and that of the trustee in bankruptcy were "mutual debts or mutual credits between the estate of a bankrupt and a creditor" within the meaning of § 68(a) of the Bankruptcy Act, 11 U.S.C.A. § 108(a).[3]

We think appellee's contention presents in substance the theory that the $15,000 advance constituted prepayment for the electric furnace scrap, and that the advance and the shipments were one integrated transaction, since the assignee for the benefit of creditors was continuing the original contract. Under this view of the case, payment should have been pleaded as an affirmative defense.

We believe the decision of this court in Republic Supply Co. v. Richfield Oil Co., 9 Cir., 1931, 59 F.2d 35, is controlling here. In that case Norwalk Company had entered into a contract with Richfield Company providing that Norwalk would extract gasoline from natural gas supplied by Richfield and at its option either retain two-thirds of the gross proceeds from sale or two-thirds of the gasoline itself as payment for its services. Prior to appointment of a receiver for Richfield in an equitable suit, Norwalk had delivered to Richfield the entire gasoline content extracted from the gas, pursuant to a supplementary agreement, and thus was entitled to a large number of gallons of gasoline from Richfield at the time the receiver was appointed. The receiver continued to deliver gas to Norwalk under the original contract and, pursuant thereto, claimed one-third of the gasoline extracted. Norwalk asserted the right to "set off"[4] against the receiver its claim against Richfield for gasoline delivered to Richfield prior to the receivership. This court rejected this contention, stating that

the problem was one of dealing equitably with all the parties, that although both obligations arise out of a single contract the receiver in continuing the contract was acting on behalf of all the creditors of Richfield, and to grant Norwalk's claim would interfere with the ratable distribution of assets among the general creditors. See also Howard v. Magazine & Book Co., 1911, 147 App.Div. 335, 131 N.Y.S. 916.

Appellee urges that the present case is similar to Greif Bros. Cooperage Co. v. Mullinix, 8 Cir., 1920, 264 F. 391. Without detailing the particular facts of that case, we note that there were a large number of staves, the subject of the contract, on hand at the time the rights of the general creditors first attached (in that case, upon adjudication in bankruptcy); that the contract was for the seller's entire production of staves during the year; and that the advance by the purchaser was specifically for the purpose of enabling the seller to pay for necessary materials and labor essential to production of the staves. These significant factors are absent in the instant case, thus distinguishing this case from the Greif case where the Eighth Circuit held that the purchaser had an equitable property interest in the subject of the contract superior to the rights of a receiver or trustee in bankruptcy.

In an attempt to distinguish the Republic Supply Company case, supra, appellee strenuously argues that an assignee for the benefit of creditors does not stand in the same position as a receiver or trustee in bankruptcy appointed by a court. The cases cited for this proposition, however,[5] merely indicate that under the law of California an assignee for the benefit of creditors has no greater right with respect to *property in-*

---

3. 63 N.C. 353; Bateman v. Connor, 1822, 6 N.J.L. 104, see Farmers' Loan & Trust Co. v. Northern Pacific R. Co., C.C.E.D. Wis. 1893, 58 F. 257, 267; 4 Am.Jur. 392, (1936); 1940, 128 A.L.R. 809, 814; 1931, 71 A.L.R. 804, 813.

3. Where the matter is one of recoupment or defense, a defendant need not rely upon § 68(a), because he would merely be proving that he is not liable in full for the plaintiff's claim. 4 Collier on Bankruptcy, § 68.03, p. 714 (14th ed. 1942); 4

Remington on Bankruptcy, § 1435, p. 160 (5th ed. 1943).

4. As in the present case, Norwalk's claim technically was more in the nature of recoupment or a defense of payment.

5. For example, First National Bank v. Menke, 1900, 128 Cal. 103, 60 P. 675; Ruggles v. Cannedy, 1899, 127 Cal. 290, 53 P. 911, 59 P. 827, 46 L.R.A. 371; Francisco v. Aguirre, 1892, 94 Cal. 180, 29 P. 495.

*terests* than his assignor, and that any property transferred by the assignment is taken subject to the equitable rights of third persons. To this extent the assignee merely stands in the shoes of his assignor. But no property interests are involved in the instant case. It was incumbent upon appellee to show (1) that there was electric furnace scrap in the possession of California Hydraulic Metals, Inc., at the time of the assignment for the benefit of creditors to which the purported property interest of appellee could attach, and (2) that such interest in fact attached to particular scrap before the assignment, either because appellee was entitled by contract to all scrap in possession of the seller [the position of the purchaser in the Greif Bros. Cooperage Co. case] or because such scrap had been appropriated specifically for the contract with appellee. Since neither of these facts is disclosed by the record, appellee has not established its case. Scrap was eventually shipped to appellee by the assignee, but by this time the $15,000 advance had, as a legal effect of the assignment, lost its identity in the common fund for the benefit of all the general creditors which was being administered by the assignee. Under these circumstances we think an assignee for the benefit of creditors stands for the purposes here involved in the same position as a court appointed receiver or trustee in bankruptcy. To accept appellee's contentions would in effect grant to it a preference and prevent the other creditors from obtaining a fair and ratable distribution of the debtor's assets.

Appellee complains that, if the theory of the trustee in bankruptcy be accepted, it will be forced to "pay twice" for the same goods. This is not quite correct. It pays once for the scrap but, because of circumstances, the money which it originally intended to use in payment has lost its identity as such by operation of law and has become part of a general fund to be administered by the trustee in bankruptcy in the interest of all creditors.

The judgment of the District Court is reversed.