In re CALIFORNIA CANNERS AND GROWERS, A California agricultural nonprofit cooperative association, Debtor.

CALIFORNIA CANNERS AND GROWERS, A California agricultural nonprofit cooperative association, Appellee,

v.

MILITARY DISTRIBUTORS OF VIRGINIA, INC., a Virginia corporation, Appellant.

BAP No. NC 85–1542–AsEMe.
Bankruptcy No. 3–83–01255–JR.
Adv. No. 3–85–0054–JR.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued and Submitted April 17, 1986.

Decided June 16, 1986.

Joseph R. Mayes, Virginia Beach, Va., for appellant.

Paul A. Epstein, Epstein & Harris, San Francisco, Cal., for appellee.

Before ASHLAND, ELLIOTT, and MEYERS, Bankruptcy Judges.

ASHLAND, Bankruptcy Judge:

Military Distributors of Virginia, Inc. appeals an order granting summary judgment to California Canners and Growers on its claim against Military Distributors for post-petition delivery of goods. The order refused to allow Military Distributors to offset its pre-petition claim against California Canners for goods delivered. We affirm.

### STANDARD OF REVIEW

We review the grant of summary judgment under the same standard as the trial court; after viewing the evidence, *de novo,* in the light most favorable to Military Distributors, we must determine whether the trial court correctly found that there was no genuine issue of material fact and that California Canners was entitled to judg-

ment as a matter of law. *Ward By & Through Ward v. United States Dept. of Labor.* 726 F.2d 516, 517 (9th Cir.1984).

## STATEMENT OF FACTS

California Canners filed a Chapter 11 petition in bankruptcy on June 13, 1983 and filed this adversary proceeding on February 4, 1985 objecting to the claim of Military Distributors.

Military Distributors admitted that it owes California Canners $86,842.47 for goods which California Canners as debtor in possession invoiced, shipped, and delivered to Military Distributors after the date of the Chapter 11 filing. Military Distributors contends that it is entitled to a setoff or credit of $68,810.52 for pre-petition debts owed by California Canners to Military Distributors.

Before bankruptcy, California Canners sold and delivered goods to Military Distributors which subsequently, upon the order of California Canners, shipped goods to various military installations. Military Distributors billed California Canners for the goods it delivered plus service charges and drayage. California Canners in turn billed the government. California Canners was on the government's approved list of suppliers; Military Distributors was not. California Canners received payment from the government but did not pay Military Distributors for several separate orders and shipments taking place before bankruptcy.

The post-petition invoices of California Canners represent several shipments made in connection with several orders placed by Military Distributors after bankruptcy.

Military Distributors argues that summary judgment should not have been granted since the parties disagree as to whether the claims arose from the "same transaction" and the bankruptcy court made no specific finding of fact in that respect.

## ISSUE

*Whether recoupment between post-petition and pre-petition claims arising from the same transaction is precluded and, if* not, whether the claims here arise out of the same transaction.

## DISCUSSION

Recoupment originated as an equitable rule of joinder. Under recoupment, a defendant could meet a plaintiff's claim with a countervailing claim that arose "out of the same transaction." See J. Moore, 3 Moore's Federal Practice ¶ 13.02, at 13–13 n. 1 (2d ed. 1985); See also *In re B & L Oil Company,* 782 F.2d 155 (10th Cir.1986).

██ Modern rules of pleading have diminished the importance of the common-law distinctions between recoupment and setoff. *Id.* However, in bankruptcy the distinctions are important. Setoff is allowed in only very narrow circumstances in bankruptcy. 4 Collier on Bankruptcy ¶ 553.03 (15th ed. 1981). But a creditor properly invoking the recoupment doctrine can receive preferred treatment even though setoff would not be permitted. *Id.* The court in *Lee v. Schweiker,* 739 F.2d 870 (3d Cir.1984) stated:

> The justification for the recoupment doctrine is that where the creditor's claim arises from the same transaction as the debtor's claim, it is essentially a defense to the debtor's claim against the creditor rather than a mutual obligation, and application of the limitations on setoff in bankruptcy would be inequitable.

*Lee v. Schweiker,* at 875.

The *Lee* court distinguished the cases in which recoupment was allowed and emphasized that most recoupment cases involved single contracts that provided for advance payments based on estimates of what would ultimately be owed, subject to later correction. The analysis in those cases was based on the treatment of executory contracts in bankruptcy. When an executory contract is involved, courts have reasoned that a debtor who assumes the favorable aspects of the contract (post-petition performance) also must take the unfavorable aspects of the same contract (obligation to repay pre-petition overpayments). *Lee* at 876. For example, when a recording

company paid advance royalties to a musician, it was allowed to recoup the advances from post-bankruptcy record sales, rather than being required to claim as an unsecured creditor for the outstanding overpayment total at the time of the bankruptcy filing. *Waldschmidt v. CBS, Inc.*, 14 B.R. 309, 314 (M.D.Tenn.1981).

Recoupment has been applied when progress payments on repair or construction contracts were made in excess of the value of the work performed before bankruptcy and performance continued after bankruptcy. *In re Midwest Service and Supply Co.*, 44 B.R. 262, 265 (D.Utah 1983). The recoupment doctrine also was applied to allow the government to recover Medicare overpayments from post-bankruptcy reimbursements to a hospital that continued to operate after filing a Chapter 11 petition. *In re Yonkers Hamilton Sanitarium, Inc.*, 22 B.R. 427, 433 (Bankr.S.D. N.Y.1982), *aff'd* 34 B.R. 385 (S.D.N.Y. 1983).

Recoupment was also applied when a party paid sums by mistake and the court determined that the other creditors would be unjustly enriched if they were permitted to share in the monies. *In re B & L Oil Co.*, 782 F.2d 155 (10th Cir.1986).

■ Military Distributors contends that the entire course of dealing between California Canners and Military Distributors was governed by a distributor agreement. Under that agreement, the pre-petition and post-petition claims grew out of the same transaction. Military Distributors argues further that the California Canners' distributor agreement was the sole contract between the parties and the only agreement before the court on the motion for summary judgment.

The California Canners/Military Distributors agreement states that Military Distributors agrees to:

1. Maintain adequate inventories necessary to fill all orders in full and on time.

2. Stock and list any additional items requested by Dunham & Smith Agencies, Inc.

3. To list all items being sold to the Military in the civilian order guide.

4. Military Distributors agrees to a service fee of 6% to be paid on delivered cost less any and all allowances.

5. As soon as possible after making delivery, to send signed Military delivery tickets and purchase orders, if any, for reimbursement by check.

6. CCG terms are 2% 10 days net 30 days.

7. Dunham & Smith has the responsibility for notifying Military Distributors of any new placements and estimated monthly movement. Dunham & Smith will also see that sufficient lead time is given so orders may be delivered complete and on time.

8. Any conditions and exceptions not covered will be mutually resolved.

The agreement between the parties shows that the arrangement was intended to establish an overall relationship between the parties. The agreement contemplates that the parties might enter into transactions for the sale and purchase of goods. The agreement does not address terms and conditions for the purchase of specific quantities of goods, delivery, price, or payment terms (other than payment terms to California Canners).

It appears that the pre-petition debt that Military Distributors seeks to recover represents the final steps in several single transactions, that is, the delivery of goods to the military installations. The post-petition claims of California Canners represent the first steps in a number of separate and distinct transactions. The goods in California Canners' post-petition invoice are not the same goods as in Military Distributors' pre-petition invoices.

Military Distributors' position would, in effect, permit anyone to offset post-petition claims against pre-petition claims. This would result in preferential treatment among creditors.

## CONCLUSION

The sales and purchases set out in California Canners' invoices constitute the transactions between the parties. Each

transaction gave rise to a debt in a specific amount. Military Distributor's debt to California Canners is entirely a post-petition debt. The offset claimed by Military Distributors is for California Canners' pre-petition obligations to Military Distributors. Recoupment would not be appropriate since one transaction occurred pre-petition and the other post-petition.

We affirm the order granting summary judgment.

ELLIOTT, Bankruptcy Judge, concurring.

I concur with the majority's result, but not their reasoning. This adversary proceeding began when California Canners and Growers ("Canners"), the debtor in possession, filed an objection to Military Distributors of Virginia, Inc.'s ("Distributors") proof of claim and, concurrently, a complaint against Distributors. *See* Bankr.R. 3007. As explained by the majority, Distributors' claim was based on Canners' failure to reimburse Distributors for the cost of certain goods it delivered prior to Canners' bankruptcy and for the related drayage fees. Canners' complaint was based on Distributors' failure to reimburse Canners for goods delivered after the commencement of Canners' bankruptcy case.

Distributors' answer restated the grounds for its claim and, in response to the complaint, alleged that it was entitled to either a "setoff" or a "credit" of the amount due it from Canners against its admitted liability to Canners.

Canners moved for summary judgment arguing that 11 U.S.C. § 553(a) prohibited setoff of Distributors' prepetition claim against Canners' postpetition claim. Distributors countered that it was entitled to a recoupment, rather than a setoff, because its claim and Canners' claim arose from the same transaction rather than independent transactions. Canners replied that the claims did not arise from the same transaction and that Distributors' failure to plead recoupment resulted in either the waiver or bar of that argument.

The bankruptcy court entered judgment for Canners finding that the only defense

raised was setoff and that setoff was barred by 11 U.S.C. § 553. It noted jurisdiction to enter final judgment under 28 U.S.C. § 157(b)(2). On appeal, Distributors admits that 11 U.S.C. § 553(a) precludes setoff of the prepetition and postpetition claims at issue. Distributors contends, however, that the bankruptcy court erred by not addressing its recoupment argument and by granting summary judgment when a material issue of fact existed as to whether the claims arose from the same transaction.

### I.

I agree with the bankruptcy court that it had jurisdiction to enter a final judgment regarding Canners' complaint, 28 U.S.C. § 157(b)(2)(C) ("counterclaims by the estate against persons filing claims against the estate"—although Canners styled its action as a "complaint," I believe that it is best characterized as a counterclaim to Distributors' proof of claim).

Canners' motion for summary judgment only requested relief regarding its complaint and that is the extent of relief granted. The judgment does not dispose of Canners' concurrent objection to Distributors' proof of claim. Therefore, it may be considered an interlocutory order rather than a final judgment. *See* Fed.R.Civ.P. 56(d). The notice of appeal would then have to be construed as a motion for leave to appeal, Bankr.R. 8003(c), and this panel would need to grant leave in order to assert appellate jurisdiction, 28 U.S.C. § 158(a), (b). In any event, further proceedings concerning the claim objection are necessary. Appellee has not raised the point and the panel has entertained the appeal. Therefore, we are deemed to have granted leave to appeal.

### II.

The bankruptcy court concluded that Distributors raised only the defense of setoff. In support of that conclusion, Canners asserts that Distributors, by labelling its claim a "credit" or "setoff," either waived the recoupment argument or is barred from asserting it.

In determining whether Canners was entitled to summary judgment, the bankrupt-

cy court should have considered, and both the majority and I do consider by way of this *de novo* review, Distributors' recoupment argument. Whether that argument is viewed as an affirmative defense or a counterclaim, *see* 2A *Moore's Federal Practice* ¶ 8.27[3] (2d ed. 1985) (noting usage of common law recoupment as both a compulsory counterclaim and an affirmative defense under the Federal Rules of Civil Procedure), Distributors failure to label their well pleaded claim as a "recoupment" was an insufficient reason for the court to ignore the argument. *Cf.* Fed.R.Civ.P. 8(c) (when a party mistakenly designates a counterclaim as a defense or a defense as a counterclaim, the court shall treat the pleading as if there had been a proper designation if justice so requires); *Alexander v. Unification Church of America*, 634 F.2d 673, 678 (2d Cir.1980) (dismissal of mislabelled count of complaint improper under the liberal rules of federal pleading). Under the Federal Rules of Civil Procedure and Bankruptcy Rules, all pleadings are to be construed so as to do substantial justice. Fed.R.Civ.P. 8(f). "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957).

### III.

In contrast to the majority, I find it unnecessary to determine if a question of fact exists regarding the availability of recoupment. In my view *Quittner v. Los Angeles Steel Casting Co.*, 202 F.2d 814 (9th Cir.1953) prohibits Distributors' proposed use of recoupment.

In *Quittner*, a purchaser advanced $15,000 to pay for scrap already delivered and to be delivered by a corporation. Prior to the seller's assignment for the benefit of creditors, $6,202.44 worth of scrap had been delivered to the purchaser. After the assignment, the assignee made two shipments of scrap worth $3,011.76. The corporation was subsequently adjudicated an involuntary bankrupt. The bankruptcy trustee then sued the purchaser for the value of the two shipments worth $3,011.76. The purchaser made a "crossclaim" for the balance of the $15,000 advance and prevailed at trial.

The Ninth Circuit reversed. It concluded that this was a matter of recoupment and not a setoff governed by former Section 68 of the Bankruptcy Act of 1898. Given the purchaser's status as a general creditor, the Ninth Circuit stated:

Scrap was eventually shipped to [the purchaser] by the assignee, but by this time the $15,000 advance had, as a legal effect of the assignment, lost its identity in the common fund for the benefit of all general creditors which was being administered by the assignee. *Under these circumstances we think an assignee for the benefit of creditors stands for the purposes here involved in the same position as a court appointed receiver or trustee in bankruptcy.* To accept appellee's contentions would in effect grant to it a preference and prevent the other creditors from obtaining a fair and ratable distribution of the debtor's assets.

Appellee complains that, if the theory of the trustee in bankruptcy be accepted, it will be forced to "pay twice" for the same goods. This is not quite correct. It pays once for the scrap but, because of circumstances, the money which it originally intended to use in payment has lost its identity as such by operation of law and has become part of a general fund to be administered by the trustee in bankruptcy in the interest of all creditors.

*Quittner*, 202 F.2d at 817 (emphasis added).

I read *Quittner* as establishing the rule that a general creditor's claim which arises prior to an assignment for the benefit of creditors or the appointment of a receiver or a bankruptcy trustee cannot be used to recoup a claim of the assignee, receiver, or bankruptcy trustee brought against the general creditor. Since a debtor in possession essentially performs the same role as a trustee, *see* 11 U.S.C. § 1107(a), the *Quittner* rule also applies to creditors'

claims arising before the debtor in possession's creation upon the filing of the bankruptcy petition, see 11 U.S.C. §§ 101(12), 1101(1).

To allow recoupment of a prepetition claim against the claim of the trustee or debtor in possession would enable the recouping general creditor to receive full payment on the creditor's claim up to the amount of the trustee's or debtor in possession's claim. Recoupment does not allow affirmative assertion of the recouping party's claim above the amount of the opposing party's claim. *Frederick v. United States*, 386 F.2d 481, 487 (5th Cir.1967). Full payment of all or part of a claim would be a preference over other general creditors who, unless given special treatment under the Bankruptcy Code, would typically be paid less than 100% on their claim through a Chapter 7 liquidation or a Chapter 11 or 13 plan. *But c.f.* 4 *Collier on Bankruptcy* ¶ 553.03 (15th ed. 1985) ("There is no element of preference ... or of an independent claim to be offset [in recoupment], but merely an arrival at just and proper liability on the main issue." Collier's appears to be referring to preference in the technical sense of an avoidable preference under 11 U.S.C. § 547 rather than to the general preference in distribution described in *Quittner.*)

Thus, even assuming Distributors is correct in arguing that a question of fact exists as to whether its claim and Canners' claim arose under the same contract and thus from the same transaction, *Quittner* makes the question immaterial because it prohibits Distributor's attempted use of recoupment.

I recognize that other courts addressing the issue have not similarly curbed the use of recoupment. *See Ashland Petroleum v. Appel (In re B & L Oil)*, 782 F.2d 155 (10th Cir.1986) (allowing recoupment of a creditor's prepetition claim against a trustee's claim and collecting similar cases).

It has been said that "[t]he justification for the recoupment doctrine is that where the creditor's claim against the debtor arises from the same transaction as the debtor's claim, it is essentially a defense to the debtor's claim against the creditor rather than a mutual obligation, and application of the limitations on setoff [now found in 11 U.S.C. § 553] would be inequitable." *Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir.1984).

I find this justification unpersuasive. To support its statement the *Lee* court cited *In re Monongahela Rye Liquors*, 141 F.2d 864 (3d Cir.1944), which noted that the right to recoupment did not arise from the setoff provisions of former Section 68. However, in *Monongahela Rye Liquors* the bankruptcy trustee attempted to recoup against the claim of the Commonwealth of Pennsylvania in order to avoid the bar of sovereign immunity and there was no problem of preferential distribution to a creditor. Equality of distribution among creditors of the debtor is one of the primary goals of the bankruptcy laws. *E.g., Joint Industry Board of the Electrical Industry v. United States*, 391 U.S. 224, 228, 88 S.Ct. 1491, 1493, 20 L.Ed.2d 546 (1968); 4 *Collier on Bankruptcy* ¶ 547.03[1] (15th ed. 1985). To say that it would be inequitable to apply 11 U.S.C. § 553's limitations on setoff to recoupment is to fail to understand that Congress has carved out a limited exception to the rule of equal distribution by allowing setoff in the first place. *See* 4 *Collier on Bankruptcy* ¶ 553.02 (15th ed. 1985). Inferring that Congress intended to allow a general creditor to recoup his claims unconstrained even by the limits on setoff simply because recoupment, by definition, is not a setoff cuts directly against the equal distribution policy of the bankruptcy laws. I think the inference is incorrect. As the Supreme Court has noted, " 'The broad purpose of the Bankruptcy Act is to bring about an equitable distribution of the bankrupt's estate....' *Kothe v. R.C. Taylor Trust*, 280 U.S. 224, 227, 74 L.Ed. 382, 385, 50 S.Ct. 142 [143], and '... if one claimant is to be preferred over others, the purpose should be clear from the statute.' *Nathanson v. NLRB*, 344 U.S. 25, 29, 97 L.Ed. 23, 29, 73 S.Ct. 80 [83]." *United States v. Embassy Restaurant*, 359 U.S. 29, 31, 79 S.Ct. 554, 555, 3 L.Ed.2d 601 (1959); *accord County Sanitation District No. 2 v. Lor-*

*ber Industries of California,* 675 F.2d 1062, 1065–66 (9th Cir.1982). That rule applies equally under the Bankruptcy Code. I am unable to find any statutory authorization for granting preferential treatment to a general creditor solely because that creditor's claim arose from the same transaction as the trustee's or debtor in possession's claim.

Recoupment has already been justified by analogy to the treatment of executory contracts in bankruptcy. *Ashland Petroleum Co.* 782 F.2d at 157. The theory advanced is that if the debtor takes advantage of the favorable aspects of the contract postpetition then the debtor must bear the unfavorable prepetition burdens of the contract. *United States v. Midwest Service and Supply (In re Midwest Service and Supply),* 44 B.R. 262 (D.Utah 1983); *In re Yonkers Hamilton Sanitarium Inc.,* 22 B.R. 427 (Bankr.S.D.N.Y.1982), aff'd, *Sapir v. Blue Cross/Blue Shield (In re Yonkers Hamilton Sanitarium),* 34 B.R. 385 (S.D.N.Y.1983).

I disagree with these cases to the extent that they hold that the debtor's continuance of a business relationship with the creditor justifies statutory, contractual, or common law recoupment of prepetition contract claims in the absence of court approved assumption of the contract. Congress has clearly authorized full satisfaction of valid prepetition claims for defaults by the debtor under an executory contract when the contract is assumed. 11 U.S.C. § 365(b)(1). I find no congressional authorization for preferential treatment of a contracting party's prepetition claims in the absence of court approved assumption of the contract. Another shortcoming of the executory contract analogy is that recoupment is not limited to executory contracts or contracts at all for that matter. *See* 29 AmJur2d *Counterclaim, Recoupment, Etc.* § 17 (2d ed. 1965).

I believe that a creditor's right to recovery of prepetition contract overpayments, which was the problem faced in *Ashland Petroleum Co., Midwest Service and Supply,* and *Sapir,* could be handled in a fashion consistent with the purposes of the Bankruptcy Code by application of con-structive trust principles, *see, e.g., N.S. Garrott & Sons v. Union Planters National Bank (In re N.S. Garrott & Sons),* 772 F.2d 462 (8th Cir.1985) (discussing the role of constructive trusts in bankruptcy), in the event the contract is not assumed.

Finally, I note that it does not appear that *Quittner* would allow a creditor to assert a recoupment defense even when setoff of mutual prepetition claims between a creditor and the estate would be permissible under 11 U.S.C. § 553. It seems inequitable to prohibit recoupment in that situation solely because of the fortuitous circumstance that the claims arose from the same transaction rather than separate transactions. Here, we are not faced with that unfairness because Distributors cannot setoff its prepetition claim against Canners' postpetition claim. 11 U.S.C. § 553(a). The harder case will be decided another day.

For the reasons stated, I would affirm the bankruptcy court's judgment.