In re Antonio Helio AZEVEDO, Debtor.

Gary L. Rainsdon, Chapter 7 Trustee, Plaintiff,

v.

Davisco Foods International, Inc., Defendant.

Bankruptcy No. 11–41561–JDP.
Adversary No. 12–8095–JDP.

United States Bankruptcy Court, D. Idaho.

Aug. 19, 2013.

592

Daniel C. Green and Brett R. Cahoon, Racine, Olson, Nye, Budge & Bailey, Pocatello, ID, Attorneys for Plaintiff.

Joseph M. Meier and Matt B. Schelstrate, Cosho Humphrey, LLP, Boise, ID, Attorneys for Defendant.

## MEMORANDUM OF DECISION

JIM D. PAPPAS, Bankruptcy Judge.

### Introduction

Plaintiff chapter 7 [1] trustee Gary L. Rainsdon ("Trustee") commenced this adversary proceeding against Defendant Davisco Foods International, Inc. ("Davisco") to avoid a transfer made by Debtor Antonio Helio Azevedo ("Azevedo") to Davisco while he was operating his dairy business under chapter 12. Trustee and Davisco have filed cross-motions for summary

---

1. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all Rule references are to the Federal Rules of Bank-

ruptcy Procedure, Rules 1001–9037. Civil Rule references are to the Federal Rules of Civil Procedure 1–86.

judgment. Dkt. Nos. 11 and 16. On July 15, 2013, the Court conducted a hearing at which counsel for the parties appeared and presented arguments in support of their respective motions. At the conclusion of the hearing, the Court took the issues under advisement. This Memorandum of Decision represents the Court's findings of fact and conclusions of law and disposes of the issues raised by the motions.[2]

### *Facts*

The parties do not dispute the following material facts.

Davisco produces cheese at its plant in Jerome, Idaho. To do so, it purchases and receives more than ninety truckloads of raw milk daily from area dairy farmers. Affidavit of Jim Ward, CFO of Davisco, Dkt. No. 16–1 at ¶ 5. Azevedo, a dairy farmer, sold his milk to Davisco from August 1997 until December 2012. *Id.* at ¶ 7.

In the industry, it is typical for the commercial purchaser to pay the dairy farmer for the milk in the month following delivery when the milk prices in the heavily-regulated market can be determined. *Id.* at ¶ 8. However, in some instances, the milk purchaser, at its discretion and upon request of the dairy farmer, may give the dairy farmer a cash "advance," or in other words, a payment in advance of the due date for milk delivered within the same month. *Id.* at ¶ 10. Instead of netting out the amount advanced against monies due to the diary farmer the following month, the milk purchaser will deduct the advance from future payments to the farmer over time. *Id.* at ¶ 13. In this fashion, the dairy farmer will have access to cash to operate, but will not have to continually request an advance from the purchaser. Affidavit of Steve Ewing, Dkt. No. 16–3 at ¶ 5. In addition, the use of advances helps ensure the purchaser's access to a steady supply of milk from stable producers. This sort of transaction forms the basis of the dispute in this case.

As noted above, Azevedo was a long-time Davisco milk supplier. Azevedo sold milk to Davisco in December 2010. Needing funds to operate, that same month, Azevedo asked Davisco for an advance for the milk he had delivered. Affidavit of Jim Ward, CFO of Davisco, Dkt. No. 16–1 at ¶ 14. At the time of the delivery, Davisco owed Azevedo $132,847.88 for milk, which amount, under normal circumstances, would be paid to Azevedo in January 2011. *Id.* Of that amount, Azevedo asked Davisco for an advance of $100,000. *Id.*

Davisco complied with Azevedo's request. The parties agreed that, instead of netting out the $100,000 advance from the payments to be made by Davisco to Azevedo in January, Davisco would deduct a fixed sum from each future payment it owed to Azevedo for future deliveries until the advance, plus 8% interest, was repaid. *Id.;* *see also* Patron Advance Disbursement, Dkt. No. 1, Exh. A. Consistent with this agreement, Davisco made deductions of approximately $8,700 each month from payments made to Azevedo from January 1, 2011 through December 22, 2011. *Id.* Over this span, Davisco deducted the agreed amount to cover the prepayment, and interest, it made to Azevedo in December 2010; the deductions from Azevedo's milk checks totaled $104,133.84. Affidavit of Jim Ward, CFO of Davisco, Dkt. No. 16–1 at ¶ 16.

Although not an express term in the advance contract, it was understood by the parties that Azevedo would continue to supply milk to Davisco. *Id.* at ¶ 17. As a result, during the time that Davisco made deductions to satisfy the advance balance,

---

**2.** *See* Rules 9014; 7052.

and while Azevedo continued to deliver milk, Davisco was never owed more than the amount it owed to Azevedo. *Id.* at ¶ 19. It was also understood that if Azevedo were to stop delivering milk, Davisco would deduct the full balance due on the advance from Azevedo's final milk payment. *Id.*

After Azevedo received the advance from Davisco, on September 20, 2011, Azevedo filed a chapter 12 bankruptcy petition. As agreed, during the pendency of the chapter 12 case, Azevedo continued to deliver milk to Davisco, and Davisco continued to make deductions from Azevedo's milk checks until December 2011 when the advance was paid in full, plus interest. The total amount deducted by Davisco during the pendency of the bankruptcy was $25,810.56.

When he could not confirm a debt repayment plan, Azevedo's bankruptcy case was converted to a chapter 7 case on May 11, 2012. Trustee commenced this action against Davisco on December 21, 2012, seeking to recover the amount Davisco deducted from Azevedo's milk payments during the pendency of the chapter 12 case as unauthorized, postpetition transfers under §§ 549(a) and 550. Dkt. No. 1. In its answer to Trustee's complaint Davisco asserted the equitable defense of recoupment. Dkt. No. 6. The parties then each moved for summary judgment.

### Analysis and Disposition

In support of his motion for summary judgment Trustee argues that the "advance" transaction between Davisco and Azevedo, at bottom, constituted a loan from Davisco to Azevedo that was repaid with interest during the pendency of Azevedo's bankruptcy case. Trustee argues Davisco's deductions were unauthorized postpetition transfers of property of the bankruptcy estate, and pursuant to §§ 549(a) and 550, he is entitled to avoid

the payments and recover them for the benefit of the creditors of the bankruptcy estate to share.

Davisco urges its summary judgment motion should be granted because the deductions it made from Azevedo's milk checks to recover the advance are protected under the equitable doctrine of recoupment. It points out that all the elements of recoupment are met under these facts, and that it is equitable to apply the defense in this case.

In reply, Trustee first argues that recoupment may not be asserted as a valid defense to a § 549(a) action by a bankruptcy trustee as a matter of law. Next, he argues that, if recoupment is an available defense in this context, it is inapplicable here because Davisco can not satisfy the "same transaction" test required by the defense. Finally, at the hearing on the motions, Trustee argued that it would be inequitable to allow Davisco to retain the funds it deducted from the milk checks because its agreement with Azevedo was not disclosed to, nor authorized by, the Court. Simply put, Trustee argues that allowing Davisco to recover its prebankruptcy loan in this fashion is inequitable to other unsecured creditors and violates the policy of pro rata distributions as to such creditors incorporated in the Bankruptcy Code.

### I. Summary Judgment Standard

Rule 7056 incorporates Civil Rule 56, which sets forth the familiar summary judgment standard for evaluating the parties' motions here: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Civil Rule 56(a). A party seeking summary judgment bears the initial burden to demonstrate the absence of a genuine issue of

material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once this initial burden is met by the moving party, the adverse party must come forward with evidence to demonstrate the existence of a genuine issue of material fact for trial. *Id.* at 323–24, 106 S.Ct. 2548; *Devereaux v. Abbey*, 263 F.3d 1070,1076 (9th Cir.2001). However, the movant may still be entitled to summary judgment if there is a dispute of fact so long as there is no "genuine" dispute of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine" dispute of fact is one that could affect the outcome of the case, or demonstrate that the moving party is not entitled to judgment as a matter of law. *Id.*

When parties submit competing motions for summary judgment targeting the same claims or issues, "each motion must be reviewed on its own merits." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). That is, a trial court is required to review the evidence properly submitted in support of each motion to determine whether each motion satisfies the summary judgment standard. *Id.* Even when faced with cross-motions for summary judgment, the court still has the responsibility to determine whether there are genuine issues of material fact for trial. *Id.*

Applying these principles to this action, the Court agrees with the parties that the issues presented for resolution are solely questions of law. Because there are no genuine issues of material fact that must be resolved in order to address the legal issues, the outcome may be determined on summary judgment. The pivotal decision for the Court under these facts is whether, as a matter of law, Davisco may invoke the equitable doctrine of recoupment as a defense to Trustee's § 549 avoidance claims,

and if so, whether the defense is properly applied to the transactions between Davisco and Azevedo.

## II. Applicable Law.

### A. Section 549.

■ Section 549(a) provides that "a trustee may 'avoid a transfer of property of the estate—(1) that occurs after the commencement of the case; and ... (2) ... (B) that is not authorized under this title or by the court.'" *Aalfs v. Wirum (In re Straightline Inv., Inc.)*, 525 F.3d 870, 877 (9th Cir.2008) (quoting §§ 549(a)(1), (2)(B)). Rule 6001 instructs that "[a]ny entity asserting the validity of a transfer under § 549 ... shall have the burden of proof." *See Hopkins v. Suntrust Mort., Inc. (In re Ellis)*, 441 B.R. 656 (Bankr.D.Idaho 2010); *Hopkins v. Lojek (In re Scheu)*, 356 B.R. 751 (Bankr.D.Idaho 2006). Therefore, in a § 549 avoidance action, the trustee bears the burden of proving that a postpetition transfer of estate property occurred, but the burden of proof as to the validity of the postpetition transfer is on the transferee. *See* 10 COLLIER ON BANKRUPTCY ¶ 6001.01[2] (Alan N. Resnick & Henry J. Sommer eds. 16th ed.) (noting that the transferee has the burden of proof per Rule 6001 only "on the issue of the validity of the transfer and not on any other [element of § 549].").

### B. Equitable Doctrine of Recoupment.

■ "It is well settled ... that a bankruptcy defendant can meet a plaintiff-debtor's claim with a counterclaim arising out of the same transaction, at least to the extent that the defendant merely seeks recoupment." *Reiter v. Cooper*, 507 U.S. 258, 265 n. 2, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993) (citing *In re B & L Oil Co.*, 782 F.2d 155, 157 (10th Cir.1986); *Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir. 1984)). Recoupment is an equitable doc-

trine that involves the "netting out of debt arising from a single transaction." *In re Straightline Inv., Inc.*, 525 F.3d at 882 (quoting *Oregon v. Harmon (In re Harmon)*, 188 B.R. 421, 424 (9th Cir. BAP 1995)). It is a "judicially developed doctrine" that is "in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded." *In re Club Wholesale Concepts, Inc.*, 94 IBCR 213, 216 (Bankr.D.Idaho 1994) (quoting *United States v. Dalm*, 494 U.S. 596, 605, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990)). Stated another way, recoupment " 'is the setting up of a demand arising from the *same transaction* as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim.' " *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1399 (9th Cir.1996) (quoting COLLIER ON BANKRUPTCY ¶ 553.02) (emphasis in original).[3]

■ In order to determine whether the "same transaction" requirement of recoupment is satisfied, the Ninth Circuit instructs the bankruptcy court to apply the "logical relationship test." *See Sims v. United States Dept. of Health and Human Servs. (In re TLC Hospitals, Inc.)*, 224 F.3d 1008, 1012 (9th Cir.2000); *Newbery Corp.*, 95 F.3d at 1403. This "logical relationship test" is the same as that used to identify a compulsory counterclaim under Civil Rule 13(a); it asks whether the defendant's claim arises out of "the same aggregate set of operative facts as the [plaintiff's] claim." *Aetna U.S. Healthcare v. Madigan (In re Madigan)*, 270 B.R. 749, 755 (9th Cir. BAP 2001) (quoting *Pinkstaff v. United States (In re Pink-*

*staff)*, 974 F.2d 113, 115 (9th Cir.1992)). "Under the 'logical relationship' test, the word 'transaction' is given liberal and flexible construction." *Id.* at 755 (citing *Newbery*, 95 F.3d at 1402). A series of transactions may satisfy this flexible standard, *Id.*, but it should not be applied "so loosely that multiple occurrences in any continuous commercial relationship would constitute one transaction," *In re TLC Hospitals, Inc.*, 224 F.3d at 1012. In reviewing commercial contracts, it is appropriate to apply the doctrine of recoupment "when there are ongoing transactions and obligations arising under the same contract." *In re Madigan*, 270 B.R. at 758 (citing *In re B & L Oil Co.*, 782 F.2d at 155 (10th Cir.1986)).[4]

■ A "bankruptcy trustee takes property subject to the rights of recoupment." *In re Madigan*, 270 B.R. at 754 (citing *Megafoods Stores, Inc. v. Flagstaff Realty Assocs. (In re Flagstaff Realty Assocs.)*, 60 F.3d 1031, 1035 (3d Cir.1995); *Reiter*, 507 U.S. at 265 n. 2, 113 S.Ct. 1213); *see also Matter of U.S. Abatement Corp.*, 79 F.3d 393, 398 (5th Cir.1996) (stating "the trustee of a bankruptcy estate takes property subject to the rights of recoupment. In other words, to the extent that a party is entitled to recoupment of funds, the debtor *has no interest* in the funds.") (internal citations and quotations omitted) (emphasis in original).

■ "The justification for the defensive use of recoupment in bankruptcy is that there is no independent basis for a 'debt,' and therefore there is no 'claim' against estate property." *In re Madigan*, 270 B.R. at 754.

---

**3.** The same transaction requirement of recoupment is primarily what distinguishes it from the doctrine of setoff. *See* § 553; *see also* 5 COLLIER ON BANKRUPTCY ¶ 553.10.

**4.** "[C]ourts often find that the 'same transaction' requirement is satisfied when corresponding liabilities arise under a single contract." *In re Madigan,* 270 B.R. at 758 (citing 5 COLLIER ON BANKRUPTCY ¶ 553.10[1] ).

Finally, because the defense is based in equity, "courts should apply the recoupment doctrine in bankruptcy cases only when it would be inequitable for the debtor to enjoy the benefits of [a] transaction without meeting its obligations." *Newbery Corp.*, 95 F.3d at 1403 (internal citations and quotations omitted). A good example of the equitable nature of the recoupment defense is exemplified in *In re Straightline Inv., Inc.*

In that case, relying upon § 549(a), a chapter 7 trustee sought to avoid a postpetition transfer made by the debtor to the defendant while the debtor was operating in a chapter 11 case. The defendant had paid $186,455 to the debtor to purchase the debtors' accounts receivable, which had a face value of approximately $200,000. However, before the debtor's case was converted to a chapter 7 case, the bankruptcy court entered an order denying the debtor's request to approve the transfer the accounts receivable to the defendant. Notwithstanding this order, the debtor transferred the accounts receivable to the defendant.

After conversion of the case, the chapter 7 trustee commenced a § 549(a) against the defendant to avoid the transfer of the accounts. The defendant argued recoupment as a defense to the trustee's avoidance action. The bankruptcy court denied recoupment was available to the defendant because it engaged in inequitable conduct. On appeal, the Ninth Circuit agreed and rejected the defendant's argument, stating "recoupment does not apply here . . . because it is an equitable remedy and equitable remedies may not be invoked to compensate someone who has engaged in inequitable conduct." *In re Straightline Inv., Inc.*, 525 F.3d at 882.

Because the defendant proceeded with the "disguised loan which the bankruptcy court had precluded" the Ninth Circuit would not allow the defendant to argue recoupment. *Id.*

### III. Application of Law to Facts

Davisco concedes that by making the deductions from monies that would otherwise be payable to Azevedo for milk purchases it received postpetition transfers of property of the bankruptcy estate. Davisco also acknowledges that these transfers were not been authorized by this Court for purposes of § 549(a) and Rule 6001. *See* Memorandum in Support of Defendant's Motion for Summary Judgment, Dkt. No. 18 at 3. Therefore, the only issue before the Court, is whether these postpetition transfers of property of the estate, though not approved by the Court, were otherwise appropriate. Davisco bears the burden of proof on this issue per Rule 6001.

*A. Whether Recoupment is a Defense to § 549(a) Action.*

Trustee argues that because § 549 contains express exceptions protecting certain types of postpetition transfers,[5] the Court should not venture outside the language of the Code to apply the equitable doctrine of recoupment in this context. The Court disagrees.

Trustee cites no cases for his position that recoupment is unavailable as a defense as a matter of law other than those that point out that recoupment is not codified in the Bankruptcy Code. This observation is, of course, correct. However, the Supreme Court has approved the defensive use of recoupment in bankruptcy cases in *Reiter v. Cooper*, even though the doctrine is not expressly incorporated in the Code.

---

**5.** Pursuant to the express exceptions of § 549, a trustee may not avoid certain transfers after the commencement of an involuntary case but before the order for relief, see § 549(b), and the trustee may not avoid transfers of interest in real property to good faith purchasers for present fair value, see § 549(c).

507 U.S. at 265 n. 2, 113 S.Ct. 1213. Recoupment has also been discussed in trustee avoidance actions in other decisions. *See, e.g., Bouma Dairy v. Braun (In re Coast Grain Co.),* EC–05–1213–PaNMa, 2006 WL 6810917 (9th Cir. BAP Jan. 31, 2006) (unpublished) (applying the doctrine of recoupment in an action under § 553(b) but determining the "same transaction" test was not met); *Warsco v. Household Bank F.S.B.,* 272 B.R. 246 (Bankr.N.D.Ind. 2002) (discussing and allowing the defense of recoupment in a chapter 7 trustee's §§ 547, 549, and 553 action); *In re Homecall of Southwest Virginia, Inc.,* 7–87–00545, 1990 WL 278658 (Bankr.W.D.Va. July 18, 1990) (discussing and applying recoupment in a § 549(a) action by the trustee); *In re Yonkers Hamilton Sanitarium, Inc.,* 22 B.R. 427 (Bankr.S.D.N.Y. 1982) (allowing defense of recoupment in a chapter 7 trustee's § 547 action). Further, as noted above, the Ninth Circuit in *In re Straightline Inv., Inc.,* considered application of the defense of recoupment in a trustee's action under § 549(a), eventually declining to apply it to protect a defendant who had ignored a prior court order.

Absent persuasive authority, the Court declines Trustee's invitation to hold that, as a matter of law, the defense of recoupment may not be invoked by a transferee in a trustee's § 549(a) action.[6]

### B. *Whether Recoupment Applies to these Transfers.*

■ Of course, even if recoupment is available, Davisco must show that it deal-

ings with Azevedo satisfies the requirements of that defense. That is, Davisco must show the parties' agreement: (1) involved a netting out of debts, (2) based on a "single transaction" between the parties, and (3) that it is equitable to apply the defense in this case.

Davisco argues that the Patron Advance Disbursement agreement evidences the netting out of the debt created by the advance, and that it renders the deductions made by Davisco a single transaction between the parties for purposes of recoupment. Further, Davisco argues it is equitable to allow it to recoup its advance because it allowed Azevedo to have a larger, steady stream of milk sale income during the repayment period.

Trustee disagrees and argues Davisco has not satisfied either elements (2) or (3) above. First, he argues the multiple deliveries of milk by Azevedo paired with the multiple deductions by Davisco violate the "single transaction" requirement of the defense. He cites the Court to *In re Madigan* and *Cal. Canners and Growers v. Military Distrib. of Va., Inc. (In re Cal. Canners and Growers),* 62 B.R. 18 (9th Cir. BAP 1986) to support this conclusion. In addition, Trustee argues that it would be inequitable to allow Davisco to retain the postbankruptcy payments because, to do so, Davisco would recover more on its claim from Debtor than the pro rata share of any distributions to be made to Azevedo's other creditors.

---

**6.** The Court's conclusion that recoupment is available as a defense to a trustee's avoidance action is apparently shared by the authors of the Collier treatise, as noted by the Ninth Circuit with approval:

[I]n *any suit or action between the estate and another,* the defendant should be entitled to show that because of matters arising out of the transaction sued on, he or she is not liable in full for the plaintiff's claim. There

is no element of preference here or of an independent claim to be set off, but merely an arrival at a just and proper liability on the main issue, and this would seem permissible without reference to … section 553(a).

*Newbery Corp.,* 95 F.3d at 1399–400 (9th Cir. 1996) (quoting COLLIER ON BANKRUPTCY ¶ 553.03, at 553–17) (emphasis added).

*1. "Same Transaction" as Determined by the "Logical Relationship Test".*

Measuring the undisputed facts against the "logical relationship test," the Court concludes that Davisco's deductions were indeed part of a "single transaction" for purposes of applying the doctrine of recoupment. As explained above, in December 2010, Davisco and Azevedo entered into the Patron Advance Disbursement, under which, contrary to the usual terms for Davisco's purchases of milk, Davisco paid Azevedo $100,000 immediately for milk delivered in that same month. Instead of deducting the amount advanced from Azevedo's January 2011 milk checks, though, Davisco agreed to spread out the payments to recover the advance over the course of the following year, thereby allowing Azevedo an immediate influx of cash, and a larger stream of money each month thereafter to cover its operating expenses. *See* Affidavit of Steve Ewing, Dkt. No. 16–3 at ¶ 5.

The Court concludes that these terms involved the "netting out of debt arising from a single transaction" or, stated another way, "the setting up of a demand arising from the same transaction as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim." The "single transaction" of the parties was the agreement in December 2010. It is the basis of the claims by Trustee, standing in the shoes of Azevedo, as well as the recoupment claim by Davisco. The Court concludes the parties' agreement creates the "logical relationship" between the claims, and the claims arise from the same aggregate set of operative facts. Further, as pointed out in *In re Madigan* and *In re B & L Oil Co.*, it is appropriate to apply the doctrine of recoupment here because the facts demonstrate a series of "ongoing transactions and obligations" created under a single agreement, the Patron Advance Disbursement contract. As contemplated by the parties' agreements, Azevedo was to continue to supply milk to Davisco, and Davisco agreed, through monthly deductions, to net out the amount it advanced incrementally. The course of performance under the contract by the parties to the agreement supports this conclusion because, as agreed, Azevedo continued to supply milk while Davisco deducted the agreed upon amount until the advance was paid off in December 2011.

The Court disagrees with Trustee that *In re Cal. Canners and Growers* and *In re Madigan* compel a different result. In *In re Cal. Canners and Growers*, the Ninth Circuit BAP affirmed the bankruptcy court's refusal to apply recoupment because the transactions between the debtor and defendant did not arise from a single transaction even though the "overall relationship between the parties" was established by a distributorship agreement. 62 B.R. at 20. In that case, the parties had pre- and postpetition debts for "several single transactions" that the defendant attempted to recoup. The BAP found that the distributorship agreement executed by the parties was only in place to govern the overarching relationship between the parties, which "contemplate[d] that the parties *might* enter into transactions for the sale and purchase of goods." *Id.* (emphasis added). The eventual dealings between the parties were found to be "separate and distinct transactions," however. *Id.*

The facts here are distinguishable from those in *In re Cal. Canners and Growers* because the Patron Advance Disbursement contract was *the* transaction between the parties. In contrast to *In re Cal. Canners and Growers*, this contract did not contemplate the possibility of future transactions between the parties. Rather, it was the transaction between the parties. The fact

that Azevedo made several deliveries of milk to Davisco, rather than a single delivery, as a method of repaying the advance, does not alter this conclusion. As stated above, this commercial contract created "ongoing transactions and obligations" under a single agreement, therefore it is appropriate to apply recoupment here.

The facts in *In re Madigan* are also significantly different from those here. In that case, an insurance company overpaid an insured on a disability claim. The insurance policy allowed the insurer to recover from the insured's benefit payments if the insured also received social security benefits for the same disability. The insurance company attempted to recover the overpayments, but the insured filed a bankruptcy petition. After bankruptcy, the insured once again filed a claim for disability benefits under the same policy. While the insured's claim was approved, the insurance company deducted the overpayments it had attempted to recover prepetition. The insured reopened his closed bankruptcy case and alleged that, in recouping the overpayments, the insurer was violating the § 524(a) discharge. In response the insurance company argued recoupment.

The bankruptcy court found recoupment was available because there was not a "logical relationship" between the two disability claims, and found that the insurance company violated the discharge injunction. On appeal, the Ninth Circuit BAP agreed and held that recoupment did not apply under these facts because these the insured's claims constituted separate transactions under the "logical relationship test." 270 B.R. at 754. The BAP found that these claims were "two distinct disability claims" and thus recoupment was not applicable. *Id.* at 759. In support of this conclusion, the Panel stated, "[h]ere there were *two* [r]eimbursement [a]gree-ments, *two* disability periods, and *two* claims separated by a two-year period of employment and bankruptcy." *Id.* at 761 (emphasis in original).

In this case, there is but a single agreement that contemplated several future milk deliveries, and several deductions from milk payments.

## 2. Is Recoupment Equitable in this Case?

Trustee argues that allowing Davisco's recoupment defense in this case would be inequitable because it violates the Bankruptcy Code's pro rata distribution paradigm. However, this argument was rejected by the Ninth Circuit in *Newbery Corp.*, 95 F.3d at 1400. There, in discussing recoupment, the Ninth Circuit noted that its prior decision in *Quittner v. Los Angeles Steel Casting, Co.*, 202 F.2d 814 (9th Cir.1953), which held that application of recoupment in the bankruptcy context "would interfere with the ratable distribution of assets among the general creditors," had been effectively overruled by the Supreme Court's decision in *Reiter v. Cooper*, 507 U.S. 258, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993). Contrary to Trustee's argument here, in *Reiter*, the Court observed that "[r]ecoupment permits a determination of the just and proper liability on the main issue, and involves no element of preference." 507 U.S. at 265 n. 2, 113 S.Ct. 1213.

In this case, Trustee seeks to unwind an agreement which bestowed considerable benefit on Azevedo by providing his business with needed capital on reasonable, ordinary commercial terms. *See Newbery Corp.*, 95 F.3d at 1403. Allowing Davisco to net out its debt incrementally through post-bankruptcy deductions from Azevedo's milk checks fostered Azevedo's efforts to reorganize. To penalize Davisco for its willingness to extend Azevedo credit solely because Azevedo was unable to confirm a

reorganization plan may make such credit difficult to obtain by other diary farmers in need, which may impair their ability to weather difficult financial times and cause them to fail. While the Bankruptcy Code endorses ratable distributions to all pre-bankruptcy creditors, allowing Davisco to retain the monies it deducted from Azevedo's milk checks in this case does no great violence to that precept.

### *Conclusion*

In a separate order, Trustee's motion for summary judgment will be denied, Davisco's motion for summary judgment will be granted, and Trustee's complaint against Davisco will be dismissed with prejudice.