**In re The SOUTHERN INSTITUTE FOR TREATMENT AND EVALUATION, INC., Debtor.**

**Bankruptcy No. 97–30889–BKC–PGH.**

United States Bankruptcy Court,
S.D. Florida,
Ft. Lauderdale Division.

Jan. 6, 1998.

Nancy A. Romfh, Lawrence P. Rochefort, Akerman, Senterfitt, & Eidson, P.A., West Palm Beach, FL, for Debtor.

Michael Goldberg, Akerman, Senterfitt, & Eidson, P.A., Fort Lauderdale, FL, for Debtor.

Grisel Alonso, Assistant U.S. Attorney, Miami, FL, for Secretary of Health & Human Services.

### ORDER DENYING DEBTOR'S MOTION TO HOLD MEDICARE IN CONTEMPT FOR VIOLATION OF THE AUTOMATIC STAY AND FOR IMPOSITION OF SANCTIONS

PAUL HYMAN, Jr., Bankruptcy Judge.

**THIS CAUSE** came before the Court for a hearing on November 18, 1997 upon Southern Institute for Treatment and Evaluation, Inc.'s (the "Debtor") Motion to Hold Medicare in Contempt for Violation of the Automatic Stay and for Imposition of Sanctions (the "Motion") and the Response of the U.S. Department of Health and Human Services ("HHS"). The central issue before the Court is whether HHS's withholding of the Debtor's post-petition payments under the Medicare program violate the automatic stay provision of the Bankruptcy Code. A secondary issue, if a violation were found, is whether the violation was wilful and intentional as claimed by the Debtor. The Court, having reviewed the pleadings filed by the parties and having heard the arguments of counsel, being otherwise fully advised in the premises, hereby enters the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

The Debtor owns and operates a community mental health center. The Debtor meets the statutory criteria and has a Medicare provider agreement with the Health Care Financing Administration ("HCFA"), a component within HHS. HCFA administers the Medicare program. The actual implementation of the Medicare reimbursement process is handled, in large part, by entities which act as fiscal intermediaries, under contract with HCFA.

Under its Medicare provider agreement, the Debtor is reimbursed for the costs incurred in providing services to Medicare beneficiaries. The Debtor is paid at intervals based on estimates of its cost of providing services, with later reconciliations based upon the Debtor's filing of an annual report of its actual costs (which report is then subject to reviews and audit). This payment system can result in the circumstance where excessive reimbursement (an "overpayment") has been paid to a provider. An overpaid provider owes the Medicare program the amount by which it has been overpaid.

The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on February 25, 1997. The Debtor continued to provide services to Medicare beneficiaries and to submit claims for Medicare reimbursement. In June, 1997, the Debtor filed its cost report for the fiscal year ended ("FYE") December 31, 1996, estimating and reporting that it had been overpaid by $617,272.00 in Medicare reimbursement for 1996. While no final reconciliation is yet available for 1996, HHS has stated that it believes that the overpayment may be larger than the Debtor's estimate. The amounts of the overpayments are in dispute between HHS and the Debtor. There have been no allegations of fraud against the Debtor. HHS has filed

a contingent and unliquidated claim in this bankruptcy proceeding.

The Debtor proposed to HHS an extended repayment plan for the $617,272.00 indebtedness which it acknowledges for FYE 12/31/96. Upon a consideration of all relevant factors, HHS, in its discretion, declined that proposal. After giving notice to the Debtor, HHS chose to exercise its asserted right of recoupment, which entails the reduction or withholding of Medicare future payments and the application of the amount reduced or withheld toward the indebtedness. HHS instructed the fiscal intermediary to withhold 100% of the Debtor's payment for post-petition services provided to its Medicare patients, claiming a right to recoup pre-petition amounts owed to it. The recoupment commenced on August 7, 1997.

HHS also instructed its fiscal intermediary to conduct prepayment utilization review ("medical review") of claims submitted by the Debtor. Under this process, which may be implemented at any time, claims are examined for sufficiency of documentation, for the appropriateness of services under the particular Medicare benefit for which reimbursement is sought, and for other claims integrity considerations. 100% of the Debtor's post-petition claims have been denied on medical review.

On October 15, 1997, the Debtor filed the Motion. At the hearing on the Motion, the Debtor made an ore tenus request for injunctive relief from HHS' 100% withholding of its payments on post-petition Medicare claims. In the Motion, the Debtor argues that 11 U.S.C. § 362 is applicable, that assumption of the Medicare provider agreement subject to court approval did not occur, and that costs and reimbursements under the Medicare program are kept strictly within each fiscal year so that HHS' withholding does not constitute a valid set-off or recoupment. The Debtor also maintains that HHS violated the anti-discrimination provision of § 525(a) of the Bankruptcy Code by declining the Debtor's cash repayment schedules and by denying 100% of the Debtor's claims on medical review. The Debtor has not filed an adversary proceeding against HHS.

In response, it is HHS' position that it has not treated the Debtor in a discriminatory fashion under Bankruptcy Code section 525(a) by utilizing its discretionary and administratively authorized process of medical review. HHS also contends that it is statutorily mandated to recoup the post-petition claims submitted by the Debtor because all of the payments and adjustments provided for in the Medicare provider agreement constitute one single transaction and that such recoupment does not violate the automatic stay.

### CONCLUSIONS OF LAW

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a), 1334(b) and this is a core proceeding under 28 U.S.C. 157(b)(1).

■ A number of the Debtor's points are not properly matters for this Court. HHS' consideration (and ultimate rejection) of the Debtor's proposed extended cash repayment plan is purely a matter within HHS' administrative discretion. Similarly, the institution of prepayment utilization review ("medical review") of the Debtor's claims for reimbursement is also a matter within HHS' administrative discretion.

■ The bankruptcy court may issue an injunction only in the context of an adversary proceeding. *See* Fed.R.Bankr.P. 7001(7), 7065. The Debtor has not filed an adversary proceeding against HHS, thus injunctive relief may not be granted. Therefore, this Court hereby denies the Debtor's ore tenus request for injunctive relief.

■ The Debtor has argued that HHS' actions violate the anti-discrimination provision at § 525(a) of the Bankruptcy Code for two reasons: (1) HHS' decline of the Debtor's cash repayment schedule for the Debtor's overpayment indebtedness and (2) HHS' recent denial of the Debtor's post-petition claims under the prepayment utilization review.

11 U.S.C. § 525(a) entitled "Protection Against Discriminatory Treatment" prevents a governmental unit from denying, revoking, suspending, or refusing to renew "a license, permit, charter, franchise, or other similar

grant ... solely because" the holder or prospective holder of that grant has declared bankruptcy. 11 U.S.C. § 525(a). Section 525 protects a debtor only from actions taken against it "solely because" the debtor had filed a bankruptcy petition. *See In re Patterson*, 967 F.2d 505, 514 (11th Cir.1992) (noting, however, that "[n]othing in this holding abrogates the general proposition that a creditor should not be forced to do business with a debtor").

In the present case, the Debtor has not been denied a license, permit, or any such similar grant. Moreover, even if a rejection of Debtor's extended cash repayment agreement or the implementation of medical review of claims could possibly be construed as implicating the sort of "grant" comprehended by § 525(a), the Debtor has not shown that HHS took any action "solely because" the Debtor has filed a petition in bankruptcy court.

■ Moreover, this Court does not have jurisdiction over any dispute regarding the amount of the Debtor's Medicare reimbursement and/or overpayments. The determination of these amounts is subject to an administrative process. The law affords no judicial consideration of any Medicare reimbursement matter before the exhaustion of administrative remedies. *See generally St. Vincent's Medical Center v. United States*, 32 F.3d 548, 549–550 (Fed.Cir.1994) (Medicare statute "contains its own comprehensive administrative and judicial review scheme"). Federal courts lack jurisdiction to consider claims related to Medicare reimbursement prior to the exhaustion of the administrative remedies. "The filing of a chapter 11 petition does not change that result." *In re St. Johns Home Health Agency*, 173 B.R. 238, 247–248 (Bankr.S.D.Fla.1994).

■ HHS' current withholding of 100% of the Debtor's post-petition payment of claims, with the application of the amounts withheld to reduce the indebtedness from past overpayment, is properly considered recoupment. *See* 42 C.F.R. §§ 405.370, 405.371(a)(2) (1997). The Medicare regulations specifically define recoupment as "the recovery by Medicare of any outstanding Medicare debt by reducing present or future Medicare payments and applying the amount withheld to the indebtedness." 42 C.F.R. § 405.370 (1997). The Medicare statute directs HHS to make "necessary adjustments on account of previously made overpayments ..." *See* 42 U.S.C. § 1395g(a). By statutory mandate, "[HHS] shall periodically determine" what a provider "should" be paid, and then make the "necessary adjustments" to reconcile this determination with what the provider "previously" was paid. *Id.*

Whether recoupment is applicable in a particular bankruptcy case hinges on whether the debtor's and the creditor's respective claims arise out of the same "transaction". The Debtor argues that under the Medicare reimbursement scheme, each fiscal year is accounted for with the submission of a cost report for that year, and that accounting is subject to a distinct audit. Accordingly, the Debtor maintains that a post-petition recoupment claim in fiscal year 1997 for a pre-petition overpayment in from a reconciliation of fiscal year 1996, are not arising from the same transaction. This Court disagrees and finds that the ongoing flow of payments and subsequent yearly adjustments constitutes one single transaction, irrespective of the periodic filing and auditing of a cost report. The Court of Appeals for the D.C. Circuit has recently discussed the issue of whether the recoupment arises from a single transaction and opined:

> ... [W]e do not think the frequency of the audit [of a cost report] appropriately defines the "transaction." The audit is simply the mechanism by which [HCFA] determines whether and by how much it ought to adjust subsequent ... payments to a particular provider ... An audit is nothing more than a snapshot in time.

> ... In determining whether the pre-petition and post-petition services should be thought of as one transaction, the key ... is the Medicare statute. Since it requires (HCFA) to take into account pre-petition overpayments in order to calculate [payment on] a post-petition claim ... Congress rather clearly indicated that it wanted a provider's stream of services to be considered one transaction for purposes of

any claim the government would have against the provider.

*United States v. Consumer Health Services of America,* 108 F.3d 390, 395 (D.C.Cir.1997). *Accord In re Mederi of Dade County,* Bankr. Ct. SDFL, Case No. 94–11437–BKC–RAM, Adv. No. 94–0370, Transcript of Oral Ruling of May 23, 1994, at p. 23 (reduction of payments via withholding "is part of a single ongoing transaction which cannot be divided into separate years in order to avoid the government's rights"). *See also* 42 C.F.R. § 405.370 (1997) (defining recoupment as recovery "of *any* outstanding Medicare debt by reducing present or future Medicare payments and applying the amount withheld to the indebtedness") (emphasis added).

■ Substantial jurisprudence, in this District and elsewhere, has established that recoupment under a Medicare provider agreement is not subject to the automatic stay in bankruptcy.[1] *Consumer Health Services of America,* 108 F.3d 390; *In re St. Johns Home Health Agency,* 173 B.R. at 241; *In re Mederi of Dade County,* Bankr.Ct. SDFL, Case No. 94–11437–BKC–RAM; *In re Visiting Nurse Association of Tampa Bay, Inc.,* 121 B.R. 114, 118–119 (Bankr.M.D.Fla.1990). None of these decisions purports to limit the exercise of recoupment to the instance where provider fraud or similar wrongdoing is suspected: "[f]iscal intermediaries must withhold payments on claims when there is reliable evidence of overpayment, either due to innocent mistake or to fraud or willful misrepresentation." *See In re St. John's Home Health Agency, Inc.,* 173 B.R. at 240 *citing* 42 C.F.R. § 405.370–.373. These decisions recognize the right of recoupment as one arising under the statute itself at 42 U.S.C. § 1395g(a) as well as under the common law. Medicare reimbursement principles derive from "an explicit statutory scheme defining

liability for particular services," which scheme a bankruptcy court may not modify. *See Consumer Health Services,* 108 F.3d at 394. The Bankruptcy Code cannot act to override an explicit statutory limitation on what the government owes for a particular service. This Court may not interfere with the administrative scheme and statutory prescription that HHS make "necessary adjustments" to current payment to account for previously rendered overpayments.

Because HHS has not engaged in a violation of the automatic stay, the secondary issue of whether such violation was wilful will not be addressed, and accordingly sanctions are not warranted in this case.

### CONCLUSION

Based upon the foregoing, the Court finds that HHS did not implement medical review and subsequent withholding of the Debtor's post-petition claims "solely because" of the Debtor's bankrupt status. Thus, HHS has not acted in a discriminatory fashion against Debtor under 525(a) of the Bankruptcy Code. The Court also finds that HHS has not violated the automatic stay provision of 11 U.S.C. § 362 by recouping 100% of the Debtor's post-petition claims; exemption under 11 U.S.C. § 362(b)(4) [2] applies to acts of recoupment by HHS.

"While such exemption may appear to run against the grain of bankruptcy policy, one must recognize the Medicare system is a phenomenally regulated industry. Even more so is the acknowledgment by the federal courts of the Medicare quasi judicial system and its ability to determine overpayments and underpayments, all of which must be exhausted within that system before this court can take jurisdiction."

---

1. This Court notes that rulings on the question of whether HCFA may exercise its right of recoupment in dealing with a bankrupt provider have not been unanimous. For example, the Court of Appeals for the Third Circuit ruled that recoupment may occur once a debtor has formally assumed its executory contract with HCFA, but not prior to that assumption. *See In re University Medical Center v. Sullivan,* 973 F.2d 1065 (3rd Cir.1992). The Eleventh Circuit has not yet had the occasion to rule on this issue.

2. 11 U.S.C. § 362(b)(4) provides, in relevant part, as follows: [t]he filing of a petition under 301, 302, or 303 of this title ... does not operate as a stay—of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

This Court finds that HHS falls within the category of a governmental unit as that term is defined under 11 U.S.C. 101(26).

*In re Visiting Nurse Assoc. of Tampa Bay,* 121 B.R. 114, 119 (Bankr.M.D.Fla.1990).

### *ORDER*

In accordance with the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Debtor's Motion to Hold Medicare in Contempt for Violation of the Automatic Stay is hereby Denied.

2. The Debtor's Motion for Imposition of Sanctions based on Violation of the Automatic Stay is hereby Denied.

3. The Debtor's ore tenus Request for Injunctive Relief from HHS' Recoupment of 100% of the Debtor's Post–Petition Claims is hereby Denied.